ALFRED WALLIS v. STATE OF ARKANSAS

5381                                              436 S.W. 2d 273

Opinion Delivered January 27, 1969

*Henry S. Wilson* for appellant.

*Joe Purcell*, Atty. Gen.; *Don Langston*, Asst. Atty. Gen. for appellee.

LYLE BROWN, Justice.    Alfred Wallis appeals from a conviction of the felonious theft of 350 bushels of soybeans.    He argues (1) that his purported confession should have been suppressed; (2) that the State failed to prove ownership of the stolen property; and (3) that there was no corroboration of the extrajudicial confession to the effect that a crime had been committed.

Mid-South Grain Company's operation at Harrisburg is completely fenced.    Entrance and exit are made through a gate which is locked at night.    On Monday morning, January 9, 1967, Charles Burrow, Mid-South's manager, discovered one of Mid-South's trucks turned over in a highway ditch a short distance from the gate. It was loaded with approximately 350 bushels of soybeans.    The Company's gate was open and the lock was broken.    The truck has been removed from under a seed house at the end of an elevator.    Seed could be loaded from the house into the truck by pulling a lever and opening two doors.    Beans had been loaded into the seed house on the previous Friday.    Mr. Burrow inspected the house and found that ''beans in the seed house had funneled down which indicated beans had been taken from it.''    Burrow was not able to state of his own knowledge that the beans found in the truck came from Mid-South's seed house.

Appellant, a Mid-South employee, became a suspect. When the suspicion developed, Wallis was apparently working out of the State in a new occupation and was not arrested until some two months after the incident. He had returned for a week-end visit when apprehended. He was taken to the sheriff's office and questioned by Deputy Sheriff Reese and Lieut. Speer of the State Police. Wallis signed a waiver worded as follows:

Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning. You have the right to the advice and presence of a lawyer even if you cannot afford to hire one. We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court. If you wish to answer questions now without a lawyer present, you have the right to stop answering questions at any time. You also have the right to stop at any time until you talk with a lawyer.

The statement contained a detailed account of breaking the lock on the gate, the loading of the truck, and the one-car accident when Wallis failed to negotiate a sharp turn. According to Wallis, the beans were to be disposed of through prearranged plans with a named confederate. The statement further recounted a previous theft from Mid-South and knowledge of other unlawful practices by other employees.

In the in-chambers hearing, Wallis conceded that Officer Speer read the waiver to him before it was signed. Wallis described the procedure relative to the statement. The accused would make a statement and "Speer would type up something and ask me if that was similar to what I said." Then the statement, when

completed, was read to Wallis by Speer, and Wallis signed it. Wallis' main challenge to the admissibility of the statement is that he was told his failure to sign would necessitate his being returned to jail to await a hearing two or three days later. He asserted that the delay would have jeopardized his new job. Bond could be made immediately, so he asserted he was told, if he would sign the confession. Additionally, he complained that he was told he could have a lawyer but did not need one.

The two investigating officers testified for the State in the *Denno* hearing. Both officers denied Wallis' version of wrongful acts on their part. Officer Reese testified that the question concerning a bond came up after the statement was completed. Wallis' wife and her father, who had learned of Wallis' whereabouts, came to the courthouse and signed his bond before he was taken back to jail. There was some dispute about when the amount of the bond was fixed and by whom. Wallis contended it was fixed by the deputy sheriff rather than a magistrate. It developed that the amount of the bond was in fact approved by Judge Mosby, but again the time element is not clear. It is Wallis' theory that the fixing of the amount of the bond by the officers lends credence to his assertion that the promise of an immediate release was the prerequisite for his signature to the confession.

Appellant insists that the waiver, which we have copied verbatim, did not advise him of his right to an attorney prior to any questioning. He was told he had a right to talk to a lawyer before any questions were asked; that a lawyer could be present during the questioning; and he was told he had a right to the advice and presence of a lawyer "even if you cannot afford to hire one." There is this sentence in the waiver which could have been better phrased: "We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court." Yet when

1028

that sentence is harmonized with the full contents of the waiver, we find no problem. The officers were telling the accused that they had no authority to appoint a lawyer for him, which was a correct statement; at the same time they were telling him that if he desired a lawyer before questioning, then he would be taken before a magistrate who would appoint counsel if he was unable to afford employment. Any other interpretation of the quoted sentence would render the remainder of the waiver meaningless.

After a careful review of the testimony given in the *Denno* hearing, it is not at all difficult to hold that the trial court was correct in denying appellant's motion to suppress.

Appellant's second point for reversal is that the State failed to prove ownership of the soybeans. We cannot agree. It is not disputed that the soybeans stored in the seed house belonged to Mid-South. Its truck was left parked for the week-end under the seed house. That house had been loaded with beans on Friday, the last day of the weekly operation. Inspection of the seed house revealed that beans had been funneled down. The truck, loaded with soybeans, was found just outside the Company's fence. Entrance and exit had been gained by the breaking of a lock. Positive testimony that the load of beans came from the seed house was not available. However, substantial circumstantial evidence of the ownership of property allegedly stolen is sufficient. *Rynes* v. *State,* 99 Ark. 121, 137 S.W. 800 (1911). Appellant finally relies for reversal on Ark. Stat. Ann. § 43-2115 (Repl. 1964). It is there provided that an extrajudicial confession will not warrant a conviction unless there is other proof that an offense was committed. We have many times held that such a confession will sustain a conviction if there is proof that the offense was committed by someone. *Hargett* v. *State,* 235 Ark. 189, 357 S.W. 2d 533 (1962). From our analysis of the circumstances under appellant's sec-

ond point, it is evident that a crime had in fact been committed.

Affirmed.

FOGLEMAN, J., not participating.